OPINION:
That, if the damages found on trial of the issue in the action at common law, had been excessive, the application to obtain redress, for that cause, to the court of equity, in the first instance, was improper, unless, for some reason not apparent in this case, a motion to the court before which that trial was, to award another trial, either could not have been made, or if made *must have been *162 unsuccessful; (a) and that no other good cause, for awarding the new trial in this case appeareth, the surprise upon the appellee (plaintiff) not being proven; the truth of the slanderous words spoken by him of the other party being a proper subject of inquiry, upon a motion, which ought to have been made instead of a bill in equity, for awarding a. new trial; and that some of the jurors should at length join in a verdict which they do not approve, prevailed upon by their fellows to do so, being in most cases unavoidable, and perhaps generally those verdicts being the most just, which are the result of discussion introduced by diversity of sentiments professed by different jurors on their first consultations:
And, reversing the decree of the county court, dismissed the bill.
This decree was reversed the 16 day of may, 1792, by the court of appeals, whose opinion was, “that the fact ‘that the verdict in the suit at common law between the parties was founded in mistake of some of the jurors,’ being well established by the depositions was a good ground for a court of equity to decree another trial in the said suit.”
This last decree is acknowledged to be right if we may attend to four jurors, of whom, although three of them were more than 30 and the other 26 years of age, neither had before served in that office, and who having declared their disapprobation of the sentence in which they seemed to concur to have been so invincible that they would not have concurred in it, if they had not been missled by some of their brethren into a belief that in questions refered to juries the opinion of a majority was decisive. But to permit part of a jury to retract a verdict recognized in solemn form is thought by some a dangerous precedent.*

 In some cases, where the damages were said to be excessive, two or three judges, who heard the evidence, would have approved motions for new trials; but the others would give no opinion, because they were not present at the first trials: so that there were no courts who would hear the motions, in other cases where verdicts haveseemed exceptionale for various reasons, prejudices against one of the parties have been so prevalent that from their influence even justices of the peace have not been free, motions for new trials to courts composed of such judges must be vain, in cases like these interposition of the court of equity may be justified. — Note in edition of 1795.

 See Ross v. Pleasants, Shore & Co., in this vol. note p. 10, and in i Wash. 158. The doctrines as to whether and to what extent jurors should be permitted to testify by affidavit or in open court, against their verdicts, have been very recently a good deal discussed in the Federal Court, for this Circuit; in the Superior Court of Law for Henrico County and in the General Court -The questions are now pending in the Appellate Courts both of the Union and this Commonwealth. In this State, they are involved in the case of Nicholas O. Thompson, found guilty in the second degree of the murder of his wife. — His motion for a new trial, based, in a great measure, upon the testimony of the jurors th emselves, was overruled by the Superior Court. The General Court not having time, at its last session, owing to the unavoidable delay in presenting his petition, to decide the questions arising thereon, awarded a writ of error, and will hear and determine them at their next term. Questions as to the separation of the jury, and their taking something to drink, though only in moderation, are also involved in the case. — Ed.]—Note in edition of 1852.